UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARNELL W. MOON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-1560 PLC |
| | ) |
| KIM BRAMLETT, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Sergeant Goggins, Gary Stolzer, Jason Schott, and Andy Johnson's (collectively "State Defendants") Motion to Dismiss, filed December 13, 2023 (ECF No. 7). Plaintiff Darnell Moon has responded to the motion (ECF No. 41), and the State Defendants have replied (ECF No. 43). For the reasons set forth below, the motion is granted.

Plaintiff filed his multi-count Complaint on October 10, 2023. (ECF No. 4). With respect to the State Defendants, Plaintiff sets forth the following claims for relief: (1) Violation of Plaintiff's First Amendment right to be free from retaliation (Count 3); (2) 42 U.S.C. § 1983 civil conspiracy (Count 9); (3) Missouri state law civil conspiracy (Count 10); (4) Missouri state law negligence per se (Count 11); and Missouri state law intentional infliction of emotional distress (Count 23). (*Id.*, ¶¶ 86, 100-103, 115). Plaintiff sues the State Defendants in their individual capacities for damages, and in their official capacities for injunctive relief. (*Id.*, ¶ 24).

In their Motion to Dismiss, the State Defendants assert that (1) all Counts in Plaintiff's Complaint must be dismissed because Plaintiff fails to plead "that any convictions or sentences imposed upon him have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a

federal court's issuance of a writ of habeas corpus", as required by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); and (2) Counts 3, 9-11 and 23 must be dismissed for failure to state claims upon which relief may be granted. (ECF No. 7).

## BACKGROUND

Plaintiff filed suit in a Missouri circuit court on October 10, 2023, alleging claims against employees of the United States Probation Office ("USPO") for the Eastern District of Missouri (Kim Bramlett, Charles Doerge, Clint Vestal, Tara Davis, Fletcher DaBera, Grant Sneed, Daniel Macke[1], Stephen Holmes, Damir Begovic, Jo Cooper, John Epple, Charo Prude, and "Unknown U.S. Probation Officers"[2]), Andrew Har of the USPO for the Southern District of Alabama, Lynn Lyons of the United States Bureau of Prisons, Patrick James and Edward Boyd of the United States Marshals Service ("USMS"), and Goggins, Stolzer, Schott and Johnson of the Ste. Genevieve County Sheriff's Department. (ECF No. 4). Plaintiff alleged that he is a "jailhouse lawyer", and that he assisted other inmates (including Willie James Lowe ("Lowe")) in their legal filings while he was incarcerated and upon his release from prison on supervised release.

In or around May 2023, Lowe contacted Plaintiff and informed him that staff at the Southeast Missouri Behavioral Health Center ("SEMO BH") were trying to induce Lowe to sign furlough paperwork transferring him to the Southern District of Alabama, despite Lowe's lack of connections to that district. (ECF No. 4, ¶¶ 31, 41). Plaintiff eventually helped Lowe file a lawsuit against Macke, Lyons, and SEMO BH staff. (*Id.*, ¶ 42).[3]

---

[1] Daniel Macke was Plaintiff's probation officer. (ECF No. 4, ¶ 35).
[2] In an Order entered August 13, 2024, the Court dismissed the Unknown U.S. Probation Officers as Defendants in this matter. (ECF No. 62).
[3] Plaintiff also helped Lowe prepare several other lawsuits, including one challenging the conditions of his confinement at the Ste. Genevieve County Jail. (ECF No. 4, ¶ 43).

Plaintiff maintains that when Macke learned of the lawsuit, he, along with Bramlett, James, Boyd, and others, used the judicial process to start recording Plaintiff's phone calls with Lowe, and intercepting his text messages and emails. (ECF No. 4, ¶¶ 45-46). Plaintiff claims Macke communicated with Har, who was Lowe's probation officer, and they, along with Lyons, James, and Boyd, "hatched a scheme to have plaintiff arrested for 'being around anyone with a felony.'" (*Id.*, ¶ 48).

Plaintiff describes the alleged scheme as follows: First, Macke requested that the Middle District of Tennessee transfer Plaintiff's period of supervised release in that district to the Eastern District of Missouri, to run concurrently with Plaintiff's period of supervised release here. (ECF No. 4, ¶ 48). Macke allegedly did so because one of the conditions of Plaintiff's supervised release in Tennessee stated as follows: "[I]f you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the Probation officer." (*Id.*). Macke, Har, Lyons, Bramlett, the jail staff at Ste. Genevieve County Jail, and others then agreed to release Lowe to Plaintiff's home. (*Id.*, ¶ 49).[4] Har pretended to reach out to Lowe, in order to give the appearance that it was Lowe who was avoiding establishing contact. (*Id.*). Plaintiff states "[t]he goal was to release Lowe to the plaintiff's apartment, and when Lowe didn't show up to the Southern District of Alabama within 72 hours, a warrant would be issued for his arrest as a fugitive, and then Mack would have plaintiff arrested for not only 'harboring a fugitive', but for 'associating with anyone with a felony'." (*Id.*). Plaintiff asserts Defendants engaged in this conduct in order to retaliate against Plaintiff for assisting Lowe in his legal endeavors, by engineering a violation of the terms of Plaintiff's supervised release. (*Id.*, ¶ 48).

---

[4] According to Plaintiff, Defendant Goggins "told plaintiff that the US Probation Office for the Eastern District of Missouri, and Southern District of Alabama, agreed to let Lowe stay with the plaintiff, and said that 'everyone' appeared to be in agreement on that." (ECF No. 4, ¶ 55).

On August 30, 2023, Macke knocked on Plaintiff's door, and Plaintiff granted him entry. (ECF No. 4, ¶ 61).  Plaintiff maintains Vestal then led Plaintiff out of his apartment, under arrest[5], and approximately 8-10 probation officers, armed with firearms and shields, stormed Plaintiff's home.  Macke allegedly informed Plaintiff the officers were conducting a "reasonable suspicion" search of Plaintiff's home, "*only* because they had reasonable suspicion to believe plaintiff was engaged in the '*illegal and unauthorized practice of law*' in the State of Missouri, and that they were confiscating plaintiff's phones and computers as proof of the plaintiff's 'illegal' activities." (*Id.* (emphasis in original)).[6]  Plaintiff believes Macke and others initiated the search of his home to punish Plaintiff for assisting Lowe with his lawsuits against Macke.  (*Id.*, ¶ 63).

Plaintiff sets forth five claims for relief against the State Defendants in his Complaint, as follows:

1. Count 3 alleges a violation of Plaintiff's First Amendment right to be free from retaliation.  Specifically, Plaintiff maintains the State Defendants retaliated against him for helping Lowe file a lawsuit against the County of Ste. Genevieve and Defendant Goggins, by working with Macke and Bramlett to organize a raid on Plaintiff's home and confiscate his phones and computers.

2. Count 9 alleges a 42 U.S.C. § 1983 civil conspiracy, asserting the State Defendants and others conspired to have Lowe arrested, and by extension cause Plaintiff to violate the terms of his supervised release by harboring a fugitive and associating with a known felon, in retaliation for Plaintiff assisting Lowe in preparing lawsuits against said Defendants.

3. Count 10 alleges a Missouri state law civil conspiracy, on the same grounds as Count 9.

4. Count 11 alleges a state law negligence per se claim, for violating Plaintiff's right not to be subject to retaliation.

5. Count 23 alleges a state law intentional infliction of emotional distress claim for the activities outlined above.

---

[5] Vestal allegedly stated that Plaintiff was not under arrest, but placed Plaintiff in his vehicle and refused to allow him to exit the vehicle.  (ECF No. 4, ¶ 61).
[6] Plaintiff maintains he has never told anyone that he was an attorney, in an attempt to obtain money from them.  (ECF No. 4, ¶ 62).

- 4 -

(ECF No. 4, ¶¶ 86, 100-103, 115). As noted above, the State Defendants filed the instant Motion to Dismiss on December 13, 2023, claiming that the Counts against them must be dismissed as barred by *Heck v. Humphrey*, and for failure to state claims upon which relief may be granted. (ECF No. 7).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor. *Id.* at 679.

## DISCUSSION

### A. § 1983 Claims

In Count 3, Plaintiff alleges a violation of his First Amendment right to be free from retaliation. Specifically, Plaintiff maintains the State Defendants retaliated against him for helping Lowe file a lawsuit against the County of Ste. Genevieve and Defendant Goggins, by working with Macke and Bramlett to organize a raid on Plaintiff's home and confiscate his phones and computers. In Count 9, Plaintiff alleges a 42 U.S.C. § 1983 civil conspiracy, asserting the State Defendants and others conspired to have Lowe arrested, and by extension cause Plaintiff to violate the terms of his supervised release by harboring a fugitive and associating with a known felon, in retaliation for Plaintiff assisting Lowe in preparing lawsuits against said Defendants. Plaintiff sues

- 5 -

the State Defendants in their individual capacities for damages, and in their official capacities for injunctive relief.  (ECF No. 4, ¶ 24).  Plaintiff alleges the State Defendants are employees of the Ste. Genevieve County Jail.  (*Id.*, ¶¶ 11-14).

### 1. Official Capacity Claims

The State Defendants assert Plaintiff's official capacity claims against them must be dismissed for failure to allege a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Plaintiff has not responded to the State Defendants' claim.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself."  *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal quotation marks and citation omitted).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citation omitted).  *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (internal quotation marks and citations omitted) (explaining that an official capacity suit against a sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (holding a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citation omitted) (stating a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In order to prevail on his official capacity claims, Plaintiff must establish the governmental entity's liability for the alleged conduct.  *Kelly*, 813 F.3d at 1075.  A jail, however, is not a distinctly suable entity under 42 U.S.C. § 1983.  *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("county jails are not legal entities amenable to suit"); *De La Garza v.*

*Kandiyohi County Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department because they are not suable entities). Consequently, Plaintiff's Complaint fails to state a claim against the State Defendants in their official capacities.

Even if Ste. Genevieve County is substituted as the State Defendants' employer, Plaintiff fails to state a claim. Unlike a jail, a local governing body such as Ste. Genevieve County can be sued directly under 42 U.S.C. § 1983. *See Monell*, 436 U.S. at 690. To prevail on this type of claim, Plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. "[A] municipality cannot be held liable [under Section 1983] on a *respondent superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (internal quotation marks and citations omitted). Such liability may attach, however, if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (internal quotation marks and citations omitted). *See also Marsh v. Phelps County*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing as viable "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

For purposes of demonstrating municipal liability, "a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (citations omitted). A "custom" is an unofficial practice characterized by a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." *Id.* (internal quotation marks and citations omitted). "Generally, an isolated incident of alleged [officer] misconduct ... cannot, as a matter of law, establish a municipal policy or custom

creating liability under § 1983." *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991)).

The allegations in Plaintiff's Complaint are insufficient to state a claim against Ste. Genevieve County based on a policy, custom, or practice, because Plaintiff alleges no facts to support this theory of liability. Plaintiff does not allege the existence of an unconstitutional policy, practice, or custom, much less facts demonstrating that the State Defendants' alleged conduct resulted from such a policy, practice, or custom. *See, e.g., Setchfield v. St. Charles County*, No. 4:21-CV-923 RLW, 2022 WL 579248, at *7 (E.D. Mo. Feb. 25, 2022). Furthermore, Plaintiff makes no allegations regarding a pattern of similar constitutional violations by other Ste. Genevieve County employees.

A municipality may also be liable under Section 1983 if it failed to properly supervise or train an employee who caused a deprivation of constitutional rights, where the failure to train or supervise rises to the level of deliberate indifference to the rights of others or tacit authorization of the offensive acts. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (failure to train); *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (failure to supervise). Plaintiff alleges no facts in his Complaint suggesting that Ste. Genevieve County failed to provide adequate training or supervision. Therefore, Plaintiff's official capacity claims against the State Defendants are subject to dismissal. *See Ulrich*, 715 F.3d at 1061 (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**2. Individual Capacity Claims**

The State Defendants contend Plaintiff's individual capacity claims against them must be dismissed for failure to allege claims upon which relief may be granted. Specifically, the State

Defendants maintain Plaintiff fails to assert any direct actions on the part of the State Defendants in furtherance of the alleged retaliation or conspiracy. Plaintiff responds that the allegations in his Complaint are sufficient to state claims against the State Defendants.

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016) (internal quotation marks and citations omitted). Specifically, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (internal quotation marks and citation omitted).

To state an individual-capacity claim under Section 1983, "a plaintiff must plead that [a] Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. More specifically, a plaintiff pursuing a cognizable individual-capacity Section 1983 claim must allege that the defendant official "was personally involved in or had direct responsibility for incidents that injured" the plaintiff. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *accord Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). As such, § 1983 liability "'requires a causal link to, and direct responsibility for, the deprivation of rights.'" *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff' rights). To that end, a plaintiff must allege facts connecting the

defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019). *See also Drummer v. Corizon Corr. Health Care*, No. 4:16-CV-1170 AGF, 2016 WL 3971399, at *1 (E.D. Mo. Jul. 25, 2016) (holding it is not enough for the plaintiff to allege that "defendants" were responsible for the violation of his constitutional rights. Instead, "[a] federal complaint must contain the 'who, what, when and where' of what happened, and each defendant must be linked to a particular action.").

a. **Defendants Stolzer, Schott and Johnson**

With respect to Defendants Stolzer, Schott, and Johnson, Plaintiff simply names them as Defendants and identifies their alleged positions of employment. (ECF No. 4, ¶¶ 12-14).[7] Plaintiff does not connect any specific actions to these Defendants. Instead, Plaintiff generally asserts that these Defendants retaliated against him (and conspired to do so) (*Id.*, ¶¶ 86, 100-101), without describing any specific involvement of the defendant. None of these broad allegations demonstrates a causal link between an individual defendant and the alleged violation of Plaintiff's constitutional rights. As such, Plaintiff has failed to state claims against Defendants Stolzer, Schott, and Johnson in their individual capacities. *See Drummer*, 2016 WL 3971399, at *1. Accordingly, the individual capacity claims against these Defendants must be dismissed.

b. **Defendant Goggins**

Plaintiff mentions Defendant Goggins several times in his Complaint. (*See* ECF No. 4, ¶¶ 49, 55, 58). Plaintiff describes speaking to Defendant Goggins in order to verify that Lowe had received permission to stay with Plaintiff. According to Plaintiff, Defendant Goggins "told plaintiff that the US Probation Office for the Eastern District of Missouri, and Southern District of

---

[7] Defendants are mentioned only in paragraphs describing their job titles, and then as Defendants listed in the various counts.

Alabama, agreed to let Lowe stay with the plaintiff, and said that 'everyone' appeared to be in agreement on that." (*Id.*, ¶ 55).

Upon consideration the Court finds that, even assuming the truth of the facts alleged, they do not support the proposition that Defendant Goggins' conduct deprived Plaintiff of a constitutionally protected right. In other words, one statement, unattached to any other allegations or factual statements in the Complaint related to Defendant Goggins, is insufficient to state a claim against Defendant Goggins. As such, Plaintiff fails to state a claim against Defendant Goggins, and Plaintiff's claims against her in her individual capacity must be dismissed.

### B. Claims Addressed On The Merits

#### 1. State Law Civil Conspiracy (Count 10)

In Count 10 of his Complaint Plaintiff alleges a civil conspiracy under Missouri law, stating the State Defendants and others conspired to have Lowe arrested, and by extension cause Plaintiff to violate the terms of his supervised release by harboring a fugitive and associating with a known felon. Plaintiff further alleges the State Defendants and others conspired to conduct an unlawful search of Plaintiff's home. The State Defendants contend Plaintiff fails to assert any actions on the part of the State Defendants in furtherance of the alleged conspiracy.

Under Missouri law, "'[a] 'civil conspiracy' is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act.'" *Olsen as Trustee for Xurex, Inc. v. Di Mase*, 24 F.4th 1197, 1203 (8th Cir. 2022) (quoting *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 780-81 (Mo. 1999)). To state a claim for civil conspiracy, Plaintiff must plead the following elements: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby damaged." *Oak Bluff Partners, Inc.*, 3 S.W.3d at 781 (citing *Rice v. Hodapp*,

919 S.W.2d 240, 245 (Mo. banc 1996)).  *See also Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012) (same).

"Allegations of conspiracy [ ] must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) (quoting *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (per curiam)).  As noted above, the Complaint contains no specific factual allegations with respect to Defendants Stolzer, Johnson, and Schott.  As to Defendant Goggins, her alleged statement that "everyone" agreed to place Lowe with Plaintiff is vague at best, and even if true, does not demonstrate a meeting of the minds to unlawfully retaliate against Plaintiff.

Accordingly, Plaintiff has failed to state a Missouri state law conspiracy claim against the State Defendants.

### 2. Negligence Per Se (Count 11)

In Count 11 Plaintiff alleges a negligence per se claim under Missouri law, for violating Plaintiff's right to be free from retaliation.  Plaintiff states "[w]hen defendants decided to enter plaintiff's home without probable cause, as part of a conspiracy to deprive plaintiff of his Fourth Amendment rights, and, inter alia, conspired to attempt to set plaintiff up so that he could be arrested, they violated 18 USC 241 and 242, both statutes which were designed to create a duty of public protection[.]"  (ECF No. 4, ¶ 103).

The State Defendants assert Plaintiff's claim for negligence per se fails because there exists no private right of action to enforce the federal criminal laws cited in Plaintiff's Complaint.  Plaintiff disagrees, contending the availability of a private right of action to enforce the law is not a prerequisite to the maintenance of a claim for negligence per se.

Under Missouri law, negligence per se "is a form of ordinary negligence that results from the violation of a statute." *Elkins v. Academy I, LP*, 633 S.W.3d 529, 537 (Mo. App. 2021) (citation

omitted).  Thus, "[i]n the analysis of negligence per se, the precursor is a violation of a statute." *Sill v. Burlington Northern Railroad*, 87 S.W.3d 386, 392 (Mo. App. 2002) (citing *King v. Morgan*, 873 S.W.2d 272, 275 (Mo. App. 1994)).

> A claimant may proceed on a negligence per se claim if the following four elements are met:  (1) There was, in fact, a violation of the statute; (2) The injured plaintiff was a member of the class of persons intended to be protected by the statute; (3) The injury complained of was of the kind the statute was designed to prevent; and (4) The violation of the statute was the proximate cause of the injury.

*Id.* (internal quotation marks and citation omitted).

It is well-settled under Missouri law that not every statutory violation is actionable in a negligence per se claim.  *Elkins*, 633 S.W.3d at 537.  Instead, "[t]he plaintiff must show, as a matter of law, that the defendant owed a duty of care to the plaintiff." *Id.* (citation omitted).  Thus, before the Court reaches the question of a violation, it must "first examine the statute itself to determine if it is a statute on which negligence per se may be premised." *Id.* at 538 (internal quotation marks and citation omitted).

As noted above, Plaintiff bases his claim of negligence per se on the State Defendants' alleged violations of 18 U.S.C. §§ 241 and 242.  Those statutes regulate behavior that is allegedly criminal in nature, and are located in Title 18, entitled "Crimes and Criminal Procedure."  The remedy for violations of the referenced statutes is a fine, imprisonment, or both.  "In general, when a statute includes measures establishing enforcement of its provisions, courts will not recognize a private right of action for the violation of that statute, except where the statute indicates legislative intent to establish a private cause of action." *Elkins*, 633 S.W.3d at 538 (internal quotation marks and citation omitted).  *See also Lafferty v. Rhudy*, 878 S.W.2d 833, 835 (Mo. App. 1994) (quoting *Christy v. Petrus*, 295 S.W.2d 122, 126 (Mo. banc 1956)) ("'[A] statute which creates a criminal offense and provides a penalty for its violation will not be construed as creating a new civil cause

of action independently of the common law, unless such appears by express terms or by clear implication to have been the legislative intent.'").

Plaintiff has provided no authority for the proposition that the statutes at issue provide a private cause of action. Because Plaintiff fails to identify a statute that would support a negligence per se claim, the Court grants the State Defendants' Motion to Dismiss Count 11 of Plaintiff's Complaint.

### 3. Intentional Infliction Of Emotional Distress (Count 23)

In Count 23 Plaintiff alleges a Missouri law intentional infliction of emotional distress claim, for the activities described in his Complaint. The State Defendants assert Plaintiff fails to state a claim, as "his allegations are 'not of sufficient severity' to state a claim for intentional infliction of emotional distress." (ECF No. 11, P. 15). Plaintiff responds that "[t]he allegations, as alleged by Plaintiff, would not, and are not, tolerable in a civilized society such as the United States, and Plaintiff has adequately pled an IIED claim under Missouri law." (ECF No. 41, P. 6).

To state a claim for intentional infliction of emotional distress under Missouri law, "a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997) (citation omitted). *See also Elliott v. Proctor & Gamble U.S. Business Services Co.*, No. 1:22-cv-166-MTS, 2023 WL 2645603, at *3 (E.D. Mo. Mar. 27, 2023) (quoting *Bailey v. Bayer CropScience, LP*, 563 F.3d 302, 310 (8th Cir. 2009)) (same); *Cook v. City of Pike County*, No. 2:23-cv-33 SEP, 2024 WL 1217390, at *18 (E.D. Mo. Mar. 21, 2024) (same). Moreover, the defendant's conduct must have been "'intended only to cause extreme emotional distress to the victim.'" *Gibson*, 952 S.W.2d at 249 (quoting *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. banc 1996)).

In Count 23, Plaintiff expresses his belief that (1) the State Defendants and others knew their actions would result in the infliction of severe emotional distress; (2) they wanted Plaintiff to suffer emotional distress; and (3) Plaintiff has suffered severe emotional distress, brought on by the actions of the State Defendants and others. (ECF No. 4, ¶ 115). Plaintiff does not state, however, that the alleged emotional distress resulted in bodily harm. *See Gibson*, 952 S.W.2d at 249. Nor does Plaintiff assert that the sole purpose of the alleged misconduct was to cause him extreme emotional distress, and the allegations in his Complaint fail to support such an inference. *See Id. See also Blakeney v. City of Pine Lawn, Mo.*, No. 4:19-CV-2017 SNLJ, 2020 WL 4569175, at *8 (E.D. Mo. Aug. 7, 2020) (internal citation omitted) ("Having failed to allege any misconduct by defendants that was solely intended to cause emotional distress, plaintiff's emotional distress claims [] must fail."). The Court therefore dismisses Count 23 of Plaintiff's Complaint for failure to state a claim for intentional infliction of emotional distress.[8]

## CONCLUSION

In accordance with the foregoing,

**IT IS HEREBY ORDERED that** the State Defendants' Motion to Dismiss (ECF No. 7) is **GRANTED**. Judgment shall be entered at the conclusion of this matter.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of October, 2024.

---

[8] In light of the above rulings, the Court need not address the State Defendants' argument that the entirety of the claims against them are barred by the United States Supreme Court's ruling in *Heck v. Humphrey*.

- 15 -